IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **FARMAKEIO OUTSOURCING, LLC** | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No.  4:24-CV-01040-O |
| **UNITED STATES FOOD AND DRUG ADMINSTRATION et al,** | § § § § | |
| Defendants. | § § | |

## OPINION & ORDER

Before the Court are Plaintiff's Motion for Summary Judgement, Brief, and Appendix in Support (ECF Nos. 42–44); Defendant United States Food and Drug Administration and Robert M. Califf's Cross Motion for Summary Judgment and Opposition, Brief, and Appendix in Support, and The Pharmaceutical Research and Manufacturers of America's Brief in Support (ECF Nos. 50–52, 64); Defendant Hope Medical Enterprises Medical's Motion for Summary Judgment and Opposition, Brief, and Appendix in Support (ECF No. 54–56); Plaintiff's Reply (ECF No. 68); Hope Medical Enterprise's Reply (ECF No. 71); and Rober M. Califf and the United States Food and Drug Administration's Reply (ECF No. 72).  After considering the briefing and applicable caselaw, the Court **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 42) and **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 50).

1

## I. BACKGROUND[1]

Plaintiff FarmaKeio Outsourcing, LLC ("Plaintiff") is a large-scale drug compounder known as an outsourcing facility. Congress added 21 U.S.C. § 353b ("Section 503B") to the Food, Drug, and Cosmetic Act in 2013. Section 503B authorizes outsourcing facilities to compound from bulk drug substances subject to a series of requirements. One requirement is that an outsourcing facility may compound a substance from active ingredients only if they are on the FDA's list "identifying bulk drug substances for which there is a clinical need." 21 U.S.C. § 353b(a)(2)(A)(i) ("the Bulk List"). To date, there are only five substances on the Bulk List.

Sodium thiosulfate was nominated for the Bulk List by a trade association of outsourcing facilities. The FDA published a final action excluding sodium thiosulfate from the Bulk List in January 2022. Plaintiff brought this action under the Administrative Procedure Act (APA), challenging (1) the FDA's final action excluding sodium thiosulfate from the Bulk List (2) arguing that because the FDA has not included all active ingredients found in FDA-approved drugs, it has "unreasonably delayed"[2] completion of the Bulk List. The Parties filed cross motions for summary judgment, which are ripe for the Court's review.

## II. LEGAL STANDARDS

### A. Standing

Federal courts are courts of limited jurisdiction and must have "statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Under the Constitution's Article III cases and controversies requirement, a plaintiff must establish standing to sue. Standing requires: (1) an injury in fact, (2) a sufficient

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from the Parties' summary judgment briefing.
[2] Compl. ¶ 69, ECF No. 1.

"causal connection between the injury and the conduct complained of" and (3) a likelihood that the injury will be redressed by a favorable decision. *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 606 (5th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); U.S. CONST. art. III, § 2. The injury must be concrete and particularized, not merely "conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). A "'threatened injury must be certainly impending to constitute [an] injury in fact,' and . . . '[a]llegations of possible future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

The party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Because "standing is not dispensed in gross," "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 821 (5th Cir. 2022) (citing *TransUnion*, 994 U.S. at 431). At the summary judgment stage, a plaintiff cannot rest on "mere allegations, but must set forth by affidavit or other evidence specific facts" to demonstrate standing. *Lujan*, 504 U.S. at 561 (citations and quotation marks omitted).

B.  **Motion for Summary Judgment**

The Court should grant summary judgment where the pleadings and evidence show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks omitted).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *See Celotex*, 477 U.S. at 323. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). For an affidavit to meet the summary judgment burden, it must be more than conclusory. *Lujan*, 504 U.S. at 888; *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009); FED. R. CIV. P. 56(e)(2).

When reviewing the evidence on a motion for summary judgment, the Court must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). If there is no support for disputed allegations such that "reasonable minds could differ as to the import of the evidence," the Court will grant the motion. *Anderson*, 477 U.S. at 250.

### III.   ANALYSIS

Plaintiff does not have standing for either claim because it fails to "set forth . . . specific facts" showing it experienced an increased regulatory burden necessary to demonstrate an injury in fact. *Lujan*, 504 U.S. at 561 (citations and quotation marks omitted); *see also Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 488 (1998) (standing for APA claims requires showing that a plaintiff has suffered or will suffer an injury-in-fact).

An injury-in-fact must be "'concrete'—that is, 'real, and not abstract.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)).

"An injury in fact can be a physical injury, a monetary injury, an injury to one's property, or an injury to one's constitutional rights, to take just a few common examples." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381, (2024).  "When a plaintiff is the 'object' of a government regulation, there should 'ordinarily' be 'little question' that the regulation causes injury to the plaintiff and that invalidating the regulation would redress the plaintiff's injuries." *Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 606 U.S. 100, 114 (2025) (quoting *Lujan*, 504 U.S. at 561).  A party is an object of regulation when it suffers an "increased regulatory burden" because of the regulation. *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015); *see, e.g. Burnett Specialists v. Cowen*, 140 F.4th 686 (2025); *c.f. All. for Hippocratic Med.*, 602 U.S. at 382.

### A. Final Action Excluding Sodium Thiosulfate

Here, Plaintiff—an outsourcing facility—argues it is an object of the regulation because "Plaintiff would be permitted to compound [sodium thiosulfate] from the bulk drug substance"[3] in the absence of the FDA's rule.  *Lujan*, 504 U.S. at 561.  This is not enough to demonstrate standing: "[e]ven if it could be said that the [FDA rules] 'directly' regulate the organizations, that does not *ipso facto* establish injury." *La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273, 287 (5th Cir. 2025).  A plaintiff "must still show an actual or imminent injury caused by that regulation." *Id*, citing *All. for Hippocratic Med.*, 602 U.S. at 382.  Thus, being in the category of those whom the regulation could impact is not enough to show one has suffered injury in fact: rather, the party must face an increased regulatory burden. *See Purl v. United States Dep't of Health & Hum. Servs.*, 787 F. Supp. 3d 284, 303 (N.D. Tex. 2025) (the "true inquiry" for standing is "whether Plaintiffs are objects of [a rule] that, if vacated, will no longer present a regulatory burden"); *Texas v. EEOC*,

---

[3] Pl.'s Reply 4, ECF No. 68.

5

933 F.3d 433, 446 (5th Cir. 2019) ("Because it is the object of the Guidance *and* has suffered multiple injuries as a result, Texas has constitutional standing") (emphasis added). Increased regulatory burdens include compliance costs, necessary alterations in operation procedures, lost profits, or threat of enforcement actions. *Id*.

To show it is subject to an increased regulatory burden, Plaintiff must prove more than that it compounds drugs. *Alliance for Hippocratic Medicine* is instructive. There, the Supreme Court held that doctors who did "not prescribe, manufacture, [compound], sell, or advertise [a substance] or sponsor a competing drug" did not suffer injury to challenge an FDA rule regulating of the mifepristone drug. *All. for Hippocratic Med.*, 602 U.S. at 385–86.

The summary judgment evidence shows Plaintiff does not compound this substance, nor has a facility capable of doing so.[4] Plaintiff does not allege "downstream or upstream economic injuries" that can suffice for third-party standing. *Id*. at 384 (listing cases exemplifying such injuries).

Plaintiff argues that *Contender Farm* supports its position that it is an object of the regulation. 779 F.3d 258. In that case, the plaintiff had standing to challenge a regulation over soring horses even though plaintiff did not plan to sore horses. But there, the plaintiff had to take "additional measures to avoid even the appearance of soring" because they competed in the type of events that were regulated, and thus horses would undergo the sore horse inspections required by the regulation. *Id*. at 266. The Fifth Circuit also observed that plaintiff "could not earn a living nor compete recreationally without participating in these types of events." *Id*.

---

[4] Dan DeNeui Supp. Decl. ¶¶ 4, 6–7, ECF No. 68-1. While the declaration says that Plaintiff is operated by executives who run commonly owned companies that have the ability to produce sodium thiosulfate, Plaintiff itself does not.

6

Neither concern is present in this case. Plaintiff does not manufacture the drug, nor does it engage in "aqueous compounding [that] use[s] the same general processes and equipment"[5] needed to compound sodium thiosulfate. Since it does not currently manufacture the drug or similarly compounded aqueous compounds, it does not engage in the type of activity that subjects it to the regulation for enforcement risks, nor does not show a need to change its operating procedures to prevent prosecution—unlike the plaintiff in *Contender Farms*. Further, Plaintiff does not need to produce sodium thiosulfate or aqueous solutions to sustain its business, unlike the plaintiff in *Contender Farms* who had to engage in regulated activity to compete. 779 F.3d at 266. For Plaintiff's comparison to prevail, the *Contender* case would have had to hold that anyone who competed in any shows could have standing. That argument goes too far. Because Plaintiff's regulatory burden remains unchanged, it cannot show it has suffered an injury.

Plaintiff contends it nevertheless has standing because it submitted an affidavit saying that the regulation imposes a chilling effect: that is, the FDA's exclusion causes them to refrain from making sodium thiosulfate.[6] Plaintiff further asserts that expressing "an intent to engage in the relevant action is sufficient" for standing.[7] This misstates the law. Rather, showing an intent to engage in conduct supports standing only when there "is a constitutional harm adequate to satisfy the injury-in-fact requirement." *Houston Chron. Pub. Co. v. City of League City, Tex.*, 488 F.3d 613, 618 (5th Cir. 2007) (constitutional harm in the First Amendment context is refraining from exercising your rights); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) ("a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course

---

[5] *Id*.
[6] Pl.'s Reply 4, ECF No. 68; DeNeui Supp. Decl. DeNeui ¶ 8, ECF No. 68-1 ("[i]f compounding sodium thiosulfate became lawful, 'then [Plaintiff] would make the investment to do it,' but has not already done so because it does not invest money in illegal activity").
[7] Pl.'s Reply 4, ECF No. 68.

of conduct arguably affected with a *constitutional interest*" (internal quotation omitted) (emphasis added); *see also Tennessee v. Lane*, 541 U.S. 509, 522–23 (2004) ("infringements of" "constitutional guarantees" are "subject to more searching judicial review").

The cases Plaintiff cites, *Gratz v. Bollinger* and *Larsen v. U.S. Navy*, do not support his broader assertion. 539 U.S. 244, 261 (2003); 486 F. Supp. 2d 11, 21 (D.D.C. 2007). These cases concern the constitutional right of equal treatment. *See Larsen*, 486 F. Supp. 2d at 17 (plaintiffs argue the Navy's polices "violate the First and Fifth Amendments"); *see also Gratz*, 539 U.S. at 261 ("intent may be relevant to standing in an *equal protection* challenge") (emphasis added). Equal protection claims vindicate the constitutional "injury [that] is the denial of equal treatment resulting from the imposition of the barrier." *Nuziard v. Minority Bus. Dev. Agency*, 676 F. Supp. 3d 473, 479 (N.D. Tex. 2023) (quoting *Ne. Fla. Ch. of the Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993)). No such constitutional injury exists here, where Plaintiff would be treated the same as compounding facilities producing the substance if it chose to do so.

Furthermore, the Fifth Circuit expressly limits chilling effect for standing to the First Amendment context. *See La Union Del Pueblo Entero*, 151 F.4th at 286 ("'Chilling' is sometimes sufficient for standing in the First Amendment context, but plaintiffs assert no First Amendment claim"); *see also Pool v. City of Houston*, 978 F.3d 307, 311 (5th Cir. 2020) (chilling effect is a "special standing rule for *First Amendment* cases recogniz[ing] that people should not have to expose themselves to actual arrest or prosecution in order to challenge a law that infringes on speech") (emphasis added) (cleaned up). Plaintiff fails the first and third prong of this test.

Plaintiff fails to meet the first prong because, as explained above, manufacturing sodium thiosulfate does not implicate a constitutional interest. Plaintiff also fails the third prong because

it does not allege any facts showing "there exists a credible threat of prosecution." *Susan B. Anthony List*, 573 U.S. at 160; *La Union Del Pueblo Entero*, 151 F.4th at 286. Plaintiff does not currently make sodium thiosulfate and alleged no facts demonstrating that it would face an enforcement action were it to do so.

Additionally, the affidavit demonstrates only conclusory intent to participate in conduct proscribed by the statute. Even if demonstrating an intent to engage in the activity were sufficient, (which it is not), any affidavit must point to specific facts: "[c]onclusory allegations of an affidavit" cannot create a fact issue to raise a genuine dispute of material fact for summary judgment. *Lujan*, 504 U.S. at 888; *First Colony Life Ins. Co.*, 555 F.3d at 181; *see also* FED. R. CIV. P. 56(e)(2) (requiring affidavits to set forth facts that would be admissible in evidence). Plaintiff asserts nothing more than "[i]f compounding sodium thiosulfate became lawful, "then [Plaintiff] would make the investment to do it." Plaintiff has not provided any factual bases to show concrete intent such as a facility site for building the equipment it would take to manufacture sodium thiosulfate, or monetary estimates for an investment to make such an investment. Thus, even if intent to engage in activity without constitutional implications were enough, the declaration is too conclusory to support standing at summary judgment. *First Colony Life Ins. Co.*, 555 F.3d at 181.

### B. Unreasonable Delay in Completing the Bulk Substances List

Plaintiff does not have standing for its unreasonable delay claim for the same reason it cannot challenge the final action excluding sodium thiosulfate: it does not provide any evidence of an injury-in-fact. Plaintiff contends that it "would benefit in a concrete manner if FDA completed the Bulk List and named all bulk drug substances for which there is a clinical need."[8] This statement is insufficient to show an injury as it is (1) conclusory and (2) demonstrates Plaintiff

---

[8] DeNeui Decl. ¶ 10, ECF No. 44.

only has a "policy concern[] [that] do[es] not suffice on [its] own to confer Article III standing." *All. for Hippocratic Med.*, 602 U.S. at 386; *see also ViroPharma, Inc. v. Hamburg*, 777 F. Supp. 2d 140, 147 (D.D.C. 2011); *Lujan*, 504 U.S. at 888; *see also* FED. R. CIV. P. 56(e)(2).

Plaintiff nevertheless tries to claim it has standing because the FDA could bring an enforcement suit against it for creating "compounds with bulk drug substances listed by FDA as qualifying for its policy of enforcement discretion (including estradiol, testosterone, and triamcinolone acetonide)."[9] This fails for two reasons.

First, as explained *supra*, the Fifth Circuit only recognizes pre-enforcement challenges to rules in the First Amendment context. Plaintiff admits that there is no enforcement action against it, nor does it allege facts showing such an action is imminent. Accordingly, there is no controversy ripe for adjudication. *Texas State LULA*, 52 F.4th at 257.

Second, the declaration from Plaintiff's CEO Dan DeNeui ("DeNeui") alleging that Plaintiff makes these substances is "internally inconsistent [and] self-contradictory," meaning Plaintiff cannot use it to meet its summary judgment burden. *Matter of Highland Cap. Mgmt., L.P.*, 116 F.4th 422, 433 (5th Cir. 2024). A few paragraphs prior to his assertion that Plaintiff illegally manufactures the other substances, DeNeui says that Plaintiff "complies with Section 503B and all other applicable laws"[10] and "does not invest money in illegal activity."[11] Because compounding these substances is illegal and not in compliance with Section 503B, his affidavit is "internally inconsistent" and cannot satisfy summary judgment evidence. *Matter of Highland Cap. Mgmt., L.P.*, 116 F.4th at 433. Plaintiff provides no further evidence.

---

[9] DeNeui Decl. ¶ 9, ECF No. 44.
[10] DeNeui Decl. ¶ 6, ECF No. 44.
[11] DeNeui Supp. Decl. ¶ 8, ECF No. 68-1.

Because Plaintiff does not have standing to bring either of its claims, the Court does not reach the arguments on the merits. *Cook v. Reno*, 74 F.3d 97, 99 (5th Cir. 1996) (if jurisdiction is lacking, then the court has no authority to consider the merits); *accord Mackenzie v. Air Line Pilots Ass'n, Int'l*, 598 F. App'x 223, 226 (5th Cir. 2014).

## IV.   CONCLUSION

Plaintiff's regulatory burden is the same regardless of the regulations on sodium thiosulfate, meaning they do not suffer an injury in fact. *La Union Del Pueblo Entero*, 151 F.4th at 287; *All. for Hippocratic Med.*, 602 U.S. at 382. Because Plaintiff did not demonstrate an injury in fact, it does not have standing to pursue either of its claims. Accordingly, the Court **GRANTS** summary judgment for the Defendant and **DENIES** Plaintiff's Motion for Summary Judgment.

**SO ORDERED** this **5th day** of **March 2026**.

_____
Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**